```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION

Julie A. Schweitzer,            :

         Plaintiff,             :

     v.                         :     Case No. 2:09-cv-1096

Michael J. Astrue,              :     JUDGE HOLSCHUH
Commissioner of Social Security,      MAGISTRATE JUDGE KEMP
                                :
         Defendant.
```

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Julie A. Schweitzer, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for social security disability benefits and supplemental security income. Both applications were filed on February 14, 2006, and alleged that plaintiff became disabled on June 1, 2001.

After initial administrative denials of her claims, plaintiff was given a hearing before an Administrative Law Judge on March 24, 2009. In a decision dated June 2, 2009, the ALJ denied benefits. That became the Commissioner's final decision on October 30, 2009, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on February 4, 2010. Plaintiff filed a motion to remand, which was denied, and she then filed a statement of specific errors on July 16, 2010. The Commissioner filed a response on September 16, 2010, which was corrected (the original filing had the wrong case number on it) the following day. Plaintiff did not file a reply brief. The case is now ready to decide.

### II. Plaintiff's Testimony

Plaintiff's testimony begins at page 31 of the

administrative record.  It can be summarized as follows.

At the time of the hearing, plaintiff was living with her boyfriend, although she had a child who lived with his father. Neither she nor her boyfriend were employed, and she received assistance from the State of Ohio as well as food stamps. Plaintiff graduated from high school and completed one year of studies at the Ohio State University.  She also completed vocational training as a medical assistant.

Plaintiff claimed disability beginning on June 1, 2001.  She did work for several weeks in 2007 at a Family Dollar store, but quit that job when she had to move.  Previously, she worked as a cashier, at several fast food restaurants, and as a hotel housekeeper.  This latter job required her to lift up to 25 pounds.

Plaintiff testified that she has Crohn's disease.  She had just been hospitalized for it in the days before the hearing. She has suffered from stomach problems since 1982 and has periodic flare-ups.  These can last for a few days to a few weeks, during which she experiences sharp, cramping pain which can be severe.  She is usually given medication for pain and admitted that at one time she took more pain medication than was prescribed.  However, she had not done that since January of 2007.  She explained that she suffers from bipolar disorder and that she would sometimes give her medicines mixed up.  She was attending group therapy to deal with mental illness and substance abuse problems.

Plaintiff testified that her mental disorder caused her to hear voices, to hallucinate, and to alternate between bouts of depression and bouts of mania.  She had been hospitalized several times for suicide attempts, although not recently.  She testified to poor memory which she believed was due to dementia.  She was seeing a doctor regularly and was prescribed medication for her

mental health problems. She usually sleeps 3 to 4 hours during the day, off and on. At one point, she was homeless for two years. Finally, she testified that she could not perform any type of job because she is unable to concentrate, although she did not know why. In response to further questioning from the ALJ, she denied any doctor had refused her medication and she denied that her doctors have told her she did not have Crohn's disease.

### III. The Medical Records

The bulk of plaintiff's argument to this Court, described in section VI below, deals with her claimed gastrointestinal disorder. Consequently, the Court will summarize only those records which relate to that problem, and will describe any other pertinent medical findings as part of its discussion of the other issue raised in plaintiff's statement of specific errors.

There are roughly 1,200 pages of medical records contained in the administrative file. The vast majority of them are records of plaintiff's emergency room visits from 2005 to 2008. They are remarkably similar - or, perhaps, their similarity is not so remarkable given that plaintiff would sometimes appear in the same emergency room many times during the course of a single month. The records also indicate that she visited the emergency rooms of multiple hospitals, with some overlap in the dates of those visits. On some occasions, her presenting problems were conditions such as chest pain, leg pain, or shortness of breath. These symptoms are not issues in this case. The majority of her visits, however, involved complaints of abdominal pain, usually accompanied by bleeding, cramping, nausea, vomiting, and/or diarrhea.

The medical records are perhaps most notable for what was not diagnosed, rather than what was. Most of them indicate that plaintiff suffers from Crohn's disease by history, but the Court

located only a single emergency room record that actually reports clinical findings consistent with that diagnosis. (Tr. 1044). Many contain a diagnosis of abdominal pain without indicating its origin or cause.

In rough chronological order, a record from April 22, 2005, indicates that plaintiff presented with complaints of abdominal pain but spent much of her time in the emergency room smoking and demanding intravenous pain medication. (Tr. 240). A note from July 5, 2005, indicated that all of the tests performed were negative, that plaintiff's complaints of nausea and vomiting were resolved, and that she did not have a gastrointestinal problem. (Tr. 261). A note from July 18, 2005, stated that her baseline for bowel movements (when she was not suffering from what she believed to be a flare-up of Crohn's disease) was two per day. That same note also reported that her descriptions of her symptoms were inconsistent and that drug-seeking behavior was suspected. (Tr. 270-71). A colonoscopy was performed several weeks later and showed no active colitis. (Tr. 283-84).

Later in 2005, notes showed similar negative test results. (Tr. 335-36). In fact, in September, 2005, based on the lack of evidence of either Crohn's disease or colitis, plaintiff's Prednisone was tapered off. (Tr. 345-46). Other notes indicated that there had never been any documentation of her alleged Crohn's disease (Tr. 377) and that a work-up done by her gastroenterologist was essentially negative. That same note stated that "Her pain seemed out of proportion with physical findings." (Tr. 404).

Notes from 2006 are not much different. A note of May 30, 2006 did show a diagnosis of abdominal pain syndrome, but prior to that, she had been suspected of narcotic-seeking behavior. (Tr. 451-52). Plaintiff was told in 2006 to seek treatment with a pain specialist for abdominal pain, Tr. 492, 499, but there is

little evidence that she did so.  Earlier, in November, 2005, an emergency room note stated that because a colonoscopy had been normal, an endoscopy was warranted, but that, too, was normal, as was an upper GI series with small bowel follow-through.  Drug-seeking behavior was "very evident" at that time and there was "no proof" of her Crohn's disease.  (Tr. 580-82).

In 2007, plaintiff was seen on a number of occasions at the Mt. Carmel St. Ann's Hospital emergency room.  On March 27, 2007, a note indicated that there were no biopsies confirming Crohn's disease.  (Tr. 830).  During the same visit, she denied having been to the emergency room four days earlier.  She had also visited that emergency room in 2005, at which time it was reported that she was not following up with her gastroenterologist.  (Tr. 870).

Various treatment notes from 2008 are also included in the record.  Again, they stated that objective tests for gastrointestinal disease were normal, Tr. 1169, that plaintiff was still suspected of narcotic-seeking behavior, Tr. 983, 1181, and that she had been cut off from any pain medications at the Ohio State University clinic.  (Tr. 1348-50).  There are no records indicating any specific functional limitations arising out of any of her complaints of gastrointestinal symptoms or conditions.

### IV.  The Vocational Expert's Testimony

Mr. Brown, a vocational expert, also testified at the administrative hearing, and his testimony begins at page 55 of the record.  He testified that plaintiff's past job as a housekeeper is usually performed at the light level and is unskilled, although plaintiff performed at the medium level.  Her work in the fast food industry ranged from unskilled to skilled and, again, is usually performed at the light exertional level.  Some of the skills from the fast food manager job would be

transferable.

Mr. Brown was asked to assume someone of plaintiff's age, education, and background who could sustain a steady pace and do tasks when motivated, could adapt to routine, predictable work with low production requirements, and who worked better under supervision or when interacting only with small groups.  Mr. Brown believed these restrictions would still allow the person to perform a housekeeping job as well as some other jobs such as cleaner and machine tender.  That person could also perform some sedentary jobs.  If the person were limited to lifting no more than 25 pounds, the machine tender job would be eliminated.  If the person were further limited to no contact with the public, plaintiff's past housekeeping job would be eliminated, but there would be many other cleaning jobs which such a person could perform.  However, if the person were to miss more than one day per month due to health problems or be unable to concentrate or complete work tasks or demonstrate reliability, that person could not work.

### V. The ALJ's Decision

The ALJ's decision is found at pages 12 through 26 of the administrative record.  In that decision, the ALJ basically determined that the only impairment from which plaintiff suffered which would keep her from working was substance abuse.  That condition, along with a personality disorder and a schizoaffective disorder, were found to be her only severe impairments.  The ALJ specifically found that plaintiff had no severe gastrointestinal disorder, whether Crohn's disease or some other type of disorder, nor severe back pain, although the ALJ did evaluate the combined impact of plaintiff's severe and non-severe impairments on her ability to work.

In reaching her decision concerning plaintiff's gastrointestinal disorder, the ALJ recognized that plaintiff had

-6-

repeatedly presented herself to emergency rooms of hospitals claiming to be suffering from complications arising from Crohn's disease. The ALJ noted that a number of examinations and tests were performed but that none of them confirm the existence of that disease. Further, plaintiff's repeated complaints of nausea and diarrhea were never substantiated and the medical records indicate that plaintiff was suspected of drug-seeking when she came to the hospital complaining of pain. In addition to testing negative for Crohn's disease, most tests were also negative for acute colitis, abscesses, or diverticulitis.

The ALJ concluded that plaintiff had no physical restrictions at all. If plaintiff's substance abuse were taken into account, she would be completely unable to work, but if that condition were removed from the analysis, she would be able to do simple, routine and repetitive work not involving contact with the general public, involving only superficial contact with coworkers, and not having strict production requirements or frequent changes in terms of job duties. Further, she could perform only jobs requiring minimal decision-making. The ALJ concluded, based upon Mr. Brown's testimony, that plaintiff could perform her past housekeeping job, at least as it is usually performed in the national economy. To some extent, the ALJ also relied upon Mr. Brown's testimony that a person with these limitations could do a significant number of other jobs including hand packer, assembler, and machine tender. Consequently, plaintiff was found not to have been under a disability at any time between the date of her alleged disability and the date of the ALJ's decision.

## VI. Plaintiff's Statements of Error

Although the Statement of Specific Errors raises two issues, it devotes a significant amount of argument to only one of them. The first issue raised, and the one that is argued extensively,

challenges the ALJ's determination that plaintiff does not have Crohn's disease or some other type of gastrointestinal disorder that is "severe" and limits plaintiff's ability to function in the workplace.  The second issue raised suggests, briefly, that the ALJ also erred in characterizing her prescription pain medication abuse as her most serious disorder.  Whether either or both of the challenged findings made by the ALJ are supported by substantial evidence is determined with reference to the following legal standard.

    <u>Standard of Review</u>.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (<u>quoting</u> <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (<u>quoting</u> <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708

F.2d 1058, 1059 (6th Cir. 1983).

As noted above, the ALJ found that plaintiff did not have any severe physical disorders and imposed no exertional restrictions on her ability to work.  Plaintiff does not necessarily disagree with the ALJ's conclusion that she does not suffer from Crohn's disease (and, given the state of the record, that is a conclusion that a reasonable person could reach), but rather takes issue with the finding that she does not have any type of a gastrointestinal disorder - no matter what it might be called - that imposes functional limitations.  In support of her argument, she asserts that the overwhelming weight of the medical records, which consist of over 1,200 pages of emergency room notes, test results, and miscellaneous mental health treatment notes, supports a finding that her complaints about pain from some gastrointestinal disease were real and that the underlying disease - whatever it may have been - was a severe impairment. Plaintiff contends that the ALJ did not perform the required critical analysis of the entire record or give valid reasons for rejecting the existence of a severe gastrointestinal disorder beyond the observation that it was plaintiff, and not a physician, who appeared to have originated the diagnosis of Crohn's disease.

A close review of the ALJ's decision shows that plaintiff's unsubstantiated claim of having been diagnosed with Crohn's disease was not the only reason given for rejecting her claim of a severe gastrointestinal disorder.  The administrative decision notes, correctly, that despite plaintiff's claim of various symptoms when she presented to the emergency room, "rarely did the claimant have acute abdominal pain or a fever on exam," and that "[s]he repeatedly complained of nausea and diarrhea, but these were always unsubstantiated ...."  Additionally, "[s]he would claim to have emesis, but examiners could find no evidence.

She would complain of rectal bleeding, but there was never any evidence." Finally, as the ALJ stated, "treating source notes indicate that the claimant's weight has remained stable despite her repeated complaints of diarrhea, vomiting, nausea, etc." (Tr. 15). Those facts, coupled with the many comments from physicians that plaintiff was engaging in drug-seeking behavior, provided a sufficient basis for concluding that plaintiff did not really have a gastrointestinal disorder (and no specific such disorder was ever diagnosed) which was prompting her to seek treatment (and narcotics). While reasonable minds might differ on this issue, the evidence is not so overwhelming as to compel a different finding. It is also worth noting that the record does not document any specific exertional restrictions which might have accompanied a gastrointestinal disorder, and a number of the jobs identified by the vocational expert could be performed at the sedentary exertional level. Further, plaintiff herself testified that it was the inability to concentrate that kept her from working. Overall, the Court finds no error in the way in which plaintiff's claim of a severe gastrointestinal disorder was evaluated.

Plaintiff's other assignment of error deals with her abuse of prescription pain medication. In the brief argument devoted to this issue, plaintiff contends that the ALJ misunderstood and mischaracterized her abuse of prescription pain medication because her misuse of this medication was related to the pain caused by her gastrointestinal disorder, a disorder which the ALJ found to be non-severe. She also claims that there is no evidence she abused pain medications after January of 2007.

This argument does not directly address the ALJ's findings concerning plaintiff's residual functional capacity, from a psychological viewpoint, after the effect of her admitted abuse of pain medication was subtracted from the equation. Thus, it is

-10-

difficult to understand what effect it would have on the outcome of this case were the Court to agree with plaintiff on this issue.  Further, the claim that there is no evidence of narcotic-seeking behavior after January of 2007 is, as the Commissioner's memorandum points out, belied by the record.  The Court is unable to find any error either in the way that the ALJ evaluated this disorder or determined how impaired plaintiff would have been had she not suffered from a substance abuse disorder.

## VII.  Recommended Decision

For all of the reasons discussed above, it is recommended that the plaintiff's statement of specific errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District

Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
